# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                      Case No. 06-CR-49

**LUCAS HEIN**
        **Defendant.**

## SENTENCING MEMORANDUM

In 2003, Marynell Hein opened a bait shop in Mukwonago, Wisconsin, which sold fishing and hunting equipment, including ammunition. Her husband Lucas, disabled from his previous occupation as a machinist due to a serious back injury, worked in the shop, selling merchandise and providing hunting and fishing advice. "Lucky Luke's" became a popular spot for area citizens interested in outdoor recreational activities.

Concerned about her obligations as a business owner, Marynell called the Bureau of Alcohol, Tobacco and Firearms ("ATF") to inquire whether she needed a license to sell ammunition. She was told that so long as the store did not sell guns she did not need a permit. Because Lucas had previously been convicted of the felony of hit and run driving, she also asked whether it was permissible for him to work in the shop and sell the ammunition. She was told (incorrectly, as it turned out) that defendant could do so, again so long as the store did not carry firearms. The Hein's did not carry guns in the store.

In 2004, in the course of another investigation in the area, ATF agents learned that Lucas was selling ammunition. An undercover agent made a purchase of 12 gauge shotgun shells, leading to his arrest and eventual indictment on charges of possessing

ammunition as a felon. 18 U.S.C. § 922(g).

Lucas (hereafter "defendant") pleaded guilty to the offense, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 12 (base level 14, U.S.S.G. § 2K2.1(a)(6), minus 2 for acceptance of responsibility) and his criminal history category at I, producing an imprisonment range of 12-18 months under the advisory sentencing guidelines. Neither side objected, and I adopted the PSR's guideline calculations. Defendant requested a non-guideline sentence, while the government advocated a term at the low end of the range. The probation office, in an unusual recommendation, suggested that I place defendant on probation. In this memorandum, I explain why I imposed a sentence of two years probation with six months of home detention.

## I. SENTENCING FACTORS

In light of United States v. Booker, 543 U.S. 220 (2005), which held that the mandatory federal sentencing guidelines were unconstitutional, the district court must now consider all of the factors set forth in 18 U.S.C. § 3553(a) in imposing sentence. Those factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,

>     medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

While the guidelines remain an important factor in the post-Booker world, the district court may not presume that they produce the "correct" sentence. United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006). Instead, the court must consider all of the relevant factors under the statute and, after considering those factors, impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). 18 U.S.C. § 3553(a). In the present case, the § 3553(a) factors plainly called for a non-guideline, non-prison sentence.

## II. DISCUSSION

### A. Nature of Offense

The offense was quite mitigated. As noted, defendant's wife stated that she checked with the ATF when she first started the business and was told that it was all right for defendant to work in the shop and sell the ammunition. I had no reason to disbelieve her. I also accepted defendant's statement during his allocution that if he had known it was illegal he never would have sold ammunition.

Further, there was no evidence that defendant was selling or possessing firearms,

or selling ammunition to felons or those who intended to cause harm or engage in other illegal activity. His sales were simply part of the business of this shop, a legitimate business registered with the state, which catered to those engaged in hunting and fishing and other lawful out-door activities. Thus, defendant's conduct did not create the danger to the public usually present when felons possess weapons.[1]

**B.    Character of Defendant**

Defendant was thirty-four years old and had a minimal prior record. His predicate felony was a hit and run case from 1996, for which he was placed on probation with 90 days of condition time. His only other conviction was a marijuana possession case from 1994. He had otherwise stayed out of trouble for the past ten years.

Defendant became disabled in 1998 due to a serious back injury and at the time of sentencing received social security disability benefits. Defendant produced medical and vocational reports confirming his conditions. According to the records, defendant needed help with activities of daily living and often used a cane. Based on his physical infirmities, he also developed mental health issues, including depression and anxiety, for which he took medication. Prior to becoming disabled, he had a solid employment history, working as a machinist. Prior to that, he served in the Marine Corps.

Defendant married Marynell in 1997, and they had two children together, plus two step-children from previous relationships. At the time of sentencing, defendant stayed home and cared for the children while his wife worked to support the family. Marynell

---

[1] At the time of his arrest, the ATF apparently advised defendant that if he cooperated it would recommend no or minimal charges. Defendant tried to cooperate, but because he was not involved in illegal activity, there was little he could do.

4

made very positive comments about defendant (and also blamed herself for his predicament, as she advised him that he could sell the ammunition). Defendant's doctor, who wrote detailing his health problems, also mentioned defendant's devotion to his kids. I also received positive letters from many friends and fellow business owners in Mukwonago. In sum, defendant's character was quite positive.

**C.     Purposes of Sentencing**

Given his character and background, I saw absolutely no indication that defendant was dangerous or a risk of recidivism. Nor, given the mitigated nature of the offense, did I find it necessary to send defendant to prison to provide just punishment. I concluded that some form of confinement and punishment was needed to deter others and promote respect for the law. Defendant obviously had serious medical treatment needs, which could better be addressed in the community. There was evidence of marijuana use in his past, but no current substance abuse.

**D.     Consideration of Guidelines**

The guidelines called for a term of 12-18 months, but for several reasons I found a sentence within that range greater than necessary to satisfy the purposes of sentencing.

First, this was an extremely mitigated case compared to the typical offense under U.S.S.G. § 2K2.1(a)(6). The offense involved ammunition, not firearms, and hunting ammunition at that. The Sentencing Commission has recognized that possession of guns or ammunition for lawful sporting purposes does not pose the same degree of risk as other forms of possession by felons, supporting a lower sentence. See U.S.S.G. § 2K2.1(b)(2) (providing that if the defendant-felon possessed the firearms or ammunition "solely for

5

lawful sporting purposes" his offense level is decreased from 14 to 6); see also United States v. Maas, 444 F. Supp. 2d 952, 956-57 (E.D. Wis. 2006) (discussing this provision and noting that it may apply even when the defendant transfers a firearm). In the present case, there was no evidence that defendant possessed the ammunition for any other purpose, intended to do anything with it other than provide it for sale to hunters in his shop, or that he transferred it to anyone who posed a danger.[2] Finally, I believed defendant's wife's statement that she contacted the ATF to try to determine whether it was legal for her husband to sell the ammunition in her shop. Perhaps she misunderstood what she was told, or did not phrase her questions correctly, but in any event, this was a situation where defendant honestly believed that he was not violating the law. Defendant's and his wife's statements were supported by the fact that defendant, formerly an avid hunter, gave up hunting when he was convicted of a felony. He followed the law in not possessing firearms, which bolstered his statements about the ammunition.

Second, defendant was in extremely poor health, as evidenced by the medical and vocational records and his receipt of social security. I found that a prison term for one in his condition would be extremely difficult, and that the Bureau of Prisons would be strained in dealing with him. Further, his diminished physical capacity made him much less likely to pose a danger, and made community confinement a better option among the types of sentences available. See 18 U.S.C. § 3553(a)(3); cf. U.S.S.G. § 5H1.4.

Third, defendant was the primary care-taker for his children, while his wife worked. Sending him to prison would have imposed an extreme hardship on the family. Pre-Booker

---

[2] I did not impose a guideline sentence under § 2K2.1(b)(2) in this case. Rather, I considered the policy underlying the guideline in imposing sentence under § 3553(a).

6

cases cautioned that there is no automatic "discount" for parents under the guidelines, see, e.g., United States v. Stefonek, 179 F.3d 1030, 1038 (7th Cir. 1999), and I continue to consider that policy in post-Booker sentencing. However, in the present case, where the guideline range was already low, there were other strong reasons for a non-guideline sentence, and defendant was particularly important to the family, it was a factor I considered.

Fourth, given his minimal prior record and law-abiding life for the past ten years, coupled with his diminished physical capacity, I found that defendant was very unlikely to re-offend and posed no danger to the public. Therefore, prison was not necessary.

Finally, I took into account the recommendation of the probation office that I place defendant on probation for two years, with no form of confinement. In my experience in post-Booker cases, such recommendations are quite rare.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of two years probation, with a condition that defendant spend the first six months of that term on home confinement, sufficient but not greater than necessary to satisfy the purposes of sentencing. I also imposed a fine of $2000, payable during the term of probation. The home detention and fine provided for just punishment, promoted respect for the law and deterred others.

Because this case was unusual and the sentence supported by factors unique to the case, because the Commission has recognized that certain forms of firearm and ammunition possession do not pose a danger sufficient to require prison, and because the sentence did not in any event vary greatly from the guidelines, it did not create unwarranted disparity. 18 U.S.C. § 3553(a)(6).

7

Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge